NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

_____

**CHRISTINE BALDRIDGE,**
**(Doing Business as Inventory Discount Printers),**
*Petitioner,*

**v.**

**GOVERNMENT PRINTING OFFICE,**
*Respondent.*

_____

2012-6001

_____

On appeal from the Government Accountability Office, Contract Appeals Board No. 11-72994.

_____

Decided: March 12, 2013

_____

CHRISTINE BALDRIDGE, of San Diego, California, pro se.

A. BONDURANT ELEY, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, for respondent. With her on the brief were STUART F. DELERY, Principal Deputy Assistant Attorney General, JEANNE E. DAVIDSON, Director, and BRIAN M. SIMKIN, Assistant Director.

———————————

Before DYK, CLEVENGER, and MOORE, *Circuit Judges*.

PER CURIAM.


Christine Baldridge seeks review of a decision from the Government Accountability Office's Contract Appeals Board ("Board"), which denied on summary judgment her claim for equitable adjustment of a contract bid. *Appeal of: Inventory Disc. Printers*, 11-1 B.C.A. (CCH) ¶ 34767, 2011 WL 2161802 (G.P.O.B.C.A. May 31, 2011) ("Board Decision"). We *affirm*.

I

This case stems from an invitation for bids ("IFB") issued by the Government Printing Office ("GPO") for laminating and other printing activities for the Department of the Army. The IFB, which provided for bid opening on August 19, 2004, contemplated the award of a contract for a 1-year base period commencing on September 1, with three 1-year option periods. Board Decision at *1. The IFB announced that approximately 25 to 60 orders would be placed each year, that each order would require approximately 100 to 5,000 copies, and that occasional orders could require up to 30,000 copies. *Id.*

The relevant portion of the IFB for the purposes of this case is a clause that defined how these orders were to be laminated:

> After printing, laminate both sides of the sheet with delustered polyester film, 0.0015″ thick. Lamination must be suitable for inscribing with grease pencil and erasing without damage to the surface and must remain clear. Lamination must not distort printed matter and must not produce

any visible evidence of an imperfect seal—no bubbles or blisters.

*Id*. (emphasis added).

Ms. Baldridge, doing business under the name "Inventory Discount Printers," was awarded the contract after submitting a bid that undercut the next lowest bidder by 18%. *Id*. She fielded orders from 2004 until the contract expired in 2005, and she continued processing open orders (with the GPO's permission) until 2007. *Id*.

On August 24, 2010, Ms. Baldridge submitted a claim to the contracting officer for equitable adjustment in the amount of $38,299.28.[1] *Id*. at *2. She complained that her original bid had been predicated upon the mistaken belief that the GPO would accept orders that were laminated using clear laminate film. *Id*. at *2. She soon discovered that the GPO expected all orders to be laminated using film with a less glossy finish, and this led to unexpected additional costs. *Id*. at *2.

---

[1] In 2007, Ms. Baldridge submitted a different claim to the contract officer requesting equitable adjustment in the same amount. *See Appeal of: Inventory Disc. Printers,* GAOCAB No. 2008-2, 2009 WL 6615014 at *2 (G.P.O.B.C.A. Apr. 20, 2009). In that case, she complained to the contracting agent that she had mistakenly believed a "pouch" laminate would be acceptable, only to later incur additional expense once she discovered that a "roll" laminate was necessary. *Id*. After the contractor rejected the claim, she appealed to the Board, but alleged an entirely new basis for relief on appeal. *Id* at *4. The Board thus dismissed her appeal for lack subject matter jurisdiction over the new theory of relief. *Id* at *4. To the extent Ms. Baldridge's present appeal urges us to consider the merits of that dismissal, we cannot do so because it issued more than 120 days ago and so her request is untimely under 41 U.S.C. § 7107(a)(1)(A).

After the GPO denied her request for equitable adjustment, Ms. Baldridge appealed to the Board. *Id.* at *2. The GPO responded by moving for summary judgment, requesting that the Board deny the appeal on the grounds that the contract language was unambiguous, and that in any event, any ambiguity was patent and so Ms. Baldridge bore the responsibility to inquire. *Id.* at *2.

The Board agreed with the GPO on both counts. It held that the IFB unambiguously required that all lamination must be performed using "delustered polyester film." Citing the Webster's New Collegiate Dictionary, the Board reasoned that the "common, ordinary meaning of the word 'deluster' is 'to reduce the sheen of.'" *Id.* at *3. Moreover, the Board found that the words "must remain clear" do not modify the type of laminate finish, but instead refer to how the laminate must hold up to inscription by and erasure of a grease pencil. *Id.* at *3.

Finding that the contract unambiguously requested some type of delustered finish, but that Ms. Baldridge instead provided only a clear glossy finish, the Board granted the GPO's motion and denied the appeal.

Additionally, the Board found that even if the IFB language was ambiguous, the ambiguity was patent, and therefore Ms. Baldridge was required to seek clarification before submitting her bid. *Id.* at *3 n.3.

Ms. Baldridge has timely petitioned this court to review the Board's Decision. We have jurisdiction under 41 U.S.C § 7107(a)(1)(A). We review the Board's contract interpretation, a question of law, de novo. 41 U.S.C § 7107(b)(1).

## II

This dispute concerns laminate film, and more specifically, the differences between clear and delustered film. For the purposes of this case, two key distinctions are undisputed: first, that clear laminate film is unfinished

and is therefore glossier than delustered laminate film, which may have a matte, satin or other type of finish; and second, that clear laminate film is less expensive than delustered laminate film.

Bearing these facts in mind, we turn to the petitioner's arguments. Ms. Baldridge asserts that she calculated her original bid under the misconception that the IFB called for clear laminate film. As it turned out, the GPO wanted her to use more costly delustered laminate film, which she provided. Now, she hopes to recover the difference between her original bid amount and her actual costs.

Ms. Baldridge may only recover under this theory if the IFB was ambiguous, which in turn is only possible if her interpretation of the IFB was reasonable in the first instance. *Precision Pine & Timber, Inc. v. United States*, 596 F.3d 817, 824 (Fed. Cir. 2010) ("Contract terms are given their plain and ordinary meaning, unless the provisions are ambiguous."); *Barron Bancshares, Inc. v. United States*, 366 F.3d 1360, 1375-76 (Fed. Cir. 2004) ("A contract provision is only ambiguous if susceptible to more than one reasonable meaning."). If the plain language of the IFB unambiguously called for delustered laminate film, that language controls. *Coast Fed. Bank, FSB v. United States*, 323 F.3d 1035, 1040-41 (Fed. Cir. 2003) ("When the contractual language is unambiguous on its face, our inquiry ends and the plain language of the Agreement controls.")

To this end, we observe that the IFB only once explicitly calls for a particular type of laminate film, when it states that all lamination must be performed "with delustered polyester film." *See* Board Decision at *1. In interpreting this language, the Board determined that the plain meaning of "deluster" is "to remove the sheen of," and that clear laminate film has a glossy sheen and therefore could not possibly have qualified as delustered.

*Id*. at *3.  Ms. Baldridge's petition does not challenge these determinations.

Instead, she argues that this instruction is contradicted by the very next sentence in the IFB, which requires the lamination "must remain clear."  She believes that this calls for a "clear" end product, which could only be achieved using clear laminate film.  She therefore contends that this language, when juxtaposed with the prior call for delustered film, rendered the contract subject to multiple reasonable interpretations.

But the IFB never indicates that the laminate *film* must be clear.  Rather, it states that the laminated sheet "must remain clear" after it has been inscribed with a grease pencil, and then erased.  Reading the "must remain clear" language in the context of the entire IFB, we agree with the Board that this phrase refers to the condition of the laminate following grease pencil erasure, not to the characteristics of the laminating film itself.

It is true, as Ms. Baldridge notes, that the IFB is silent as to what type of delustered finish she should have used, i.e., matte, satin, or some other.  But it does not follow that clear laminate film was therefore an acceptable choice, because clear film indisputably is not delustered.

Moreover, even if the IFB language was ambiguous, the ambiguity is obvious from the face of the contract and is therefore patent.  Under Ms. Baldridge's own theory, the IFB calls for two completely inconsistent types of laminate film.  When presented with such a glaring ambiguity, the government contractor has a duty to inquire of the contracting officer as to the language's true meaning before submitting a bid.  *Triax Pac., Inc. v. W.*, 130 F.3d 1469, 1474-75 (Fed. Cir. 1997).  If the contractor fails to do so, and here Ms. Baldridge did not, we must construe the patently ambiguous contract language against her.  *Id*.

In sum, we agree that the IFB unambiguously called for delustered laminate film, and so we affirm the Board's grant of summary judgment.[2]  Furthermore, and in any event, we would construe the contract against her even if the language was ambiguous because such an ambiguity would be patent.  Accordingly, we affirm.

## AFFIRMED

## COSTS

No costs.

---

[2] For this reason, we need not reach the secondary question of whether Ms. Baldridge's discovery requests were appropriately denied.  Evidence that is extrinsic to the contract is inadmissible when the contract itself is unambiguous.  *See Barron Bancshares*, 366 F.3d at 1375 ("If the terms of a contract are clear and unambiguous . . . extrinsic evidence is inadmissible to interpret them.").